# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

PRINCE RODGERS,

                                        Plaintiff,

v.                                                          9:19-CV-419
                                                            (DNH/ATB)

DEBRA GUMBUS, et. al.,

                                        Defendants.

PRINCE RODGERS, Plaintiff pro se
MARK G. MITCHELL, Asst. Attorney General for Defendants.

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this civil rights complaint, plaintiff alleges that the defendants violated his constitutional rights relative to the suspension of his law library privileges while he was incarcerated at Franklin Correctional Facility. ("Franklin C.F."). (Dkt. No. 1, "Compl." at 6-16).  Plaintiff sought both monetary and injunctive relief for the alleged constitutional violations. (Compl. at 17).

Presently before the court is defendants' unopposed motion for summary judgment.[1] (Dkt. No. 40).  For the following reasons, the court will recommend

---

[1] Defendants filed their motion, pursuant to Fed. R. Civ. P. 56, on November 20, 2020. (Dkt. No. 40).  The motion included a notice to plaintiff, warning him that a failure to respond could result in dismissal of the complaint. (Dkt. No. 40 at 1).  On November 23, 2020, the court issued a notice to plaintiff, reminding him that his deadline to respond to the motion was December 7, 2020. (Dkt. No. 42).  After plaintiff's deadline passed without response, on December 18, 2020, I issued a sua sponte order, extending plaintiff's time to respond to the motion to January 19, 2021 and reiterating the warning regarding failure to respond to a summary judgment motion. (Dkt. No. 43).  Plaintiff filed a

granting defendants' motion and dismissing the complaint in its entirety.

## DISCUSSION

### I.  Facts and Procedural History

Plaintiff filed his complaint on April 8, 2018, and subsequently filed a motion to proceed in forma pauperis ("IFP").  (Compl.; Dkt. No. 5).  On June 10, 2019, Judge D'Agostino[2] issued an order in which she granted plaintiff's motion for IFP, dismissed certain claims. (Dkt. No. 7).  Some of the claims were dismissed with and some without prejudice to filing an amended complaint.  Judge D'Agostino then ordered that a response to the complaint be filed by the remaining defendants, addressing the remaining claims. (*Id.*)

Judge D'Agostino provided a thorough summary of the facts as alleged in plaintiff's complaint.  At all times relevant to the underlying dispute, plaintiff was an inmate at Franklin C.F.[3]  On April 20, 2017, a policy (Facilities Operations Manual

---

change of address on January 22, 2021, but did not file any response to the motion, nor did he request an extension of time to do so. (Dkt. No. 44).  Because plaintiff's change of address was dated January 4, 2021, and it was unclear when the change of address occurred, and thus, whether he had received my December 18, 2020 Text Order, I issued another sua sponte order on January 28, 2021, extending plaintiff's time to respond to defendants' motion to February 25, 2021. (Dkt. No. 45).  Once again, I repeated the warning regarding failure to respond. (*Id.*)  On February 17, 2021, plaintiff filed a request for extension of time to respond to the motion, which I granted on February 19, 2021. (Dkt. Nos. 46, 47).  In my February 19, 2021 order, I directed the clerk to provide plaintiff with a copy of the defendants' motion as requested by plaintiff in his letter, and I extended plaintiff's time to respond to April 15, 2021. (Dkt. No. 47).  Once again, I repeated the warning regarding failure to respond. (*Id.*)  Plaintiff has failed to respond or to request an extension of time on or before the court's latest deadline.

[2] The case was reassigned to Judge Hurd on August 16, 2019.  (Dkt. No. 16).

[3] It is undisputed that on or about August 6, 2019, approximately two months after Judge D'Agostino issued her order on initial review, plaintiff was released from DOCCS custody. (Dkt. No. 15).  It now appears, based on plaintiff's change of address notice, that he is incarcerated in the Westchester County Jail. (Dkt. No. 44).

("FOM") #371) was implemented authorizing officials at Franklin C.F. to suspend inmates from general use of the law library, based on a failure to attend three scheduled call-outs. (Compl. at 13-15). Plaintiff was thereafter suspended from the law library on four separate occasions – May 30, 2017; November 26, 2017; May 20, 2018; and November 26, 2018 – by defendant Correction Officer/Law Library Supervisor Debra Gumbus ("Gumbus"), in accordance with FOM #371. (Compl. at 6-16).

In Judge D'Agostino's initial order, she dismissed any First Amendment access to courts claims relating to the November 26, 2017, May 20, 2018, and November 26, 2018 suspensions against all defendants.[4] (Dkt. No. 7 at 15-16). Judge D'Agostino allowed First Amendment access to courts claims for the May 30, 2017 suspension to proceed against defendants Gumbus, Darwin LaClair, Ronald Foster, and M.J. King. (Dkt. No. 7 at 15).

Plaintiff also claimed that defendant Gumbus retaliated against plaintiff by suspending him from the library and filing false misbehavior reports due to plaintiff's grievances against her. Judge D'Agostino allowed these retaliation claims to proceed against defendants Gumbus and LaClair. (Dkt. No. 7 at 18). Judge D'Agostino allowed the retaliation claims to proceed against defendant LaClair based on plaintiff's allegation that defendant LaClair affirmed the denial of plaintiff's grievances. (Dkt. No. 7 at 18). The judge expressed no opinion as to whether the claims she allowed to go forward would survive a properly filed dispositive motion. (Dkt. No. 7 at 15, 18)

---

[4] Although such claims were dismissed without prejudice, plaintiff has not timely moved to amend his complaint to allege any additional facts that would state a denial of access to courts on the dates in question. Based on Judge D'Agostino's decision it is likely that any attempt at amending to allege such claims would have been futile.

In her June 10, 2019 decision, Judge D'Agostino found that plaintiff's claims for injunctive relief against defendants Kevin Bruen ("Bruen"), Victoria Barber ("Barber"), and Anthony Annucci ("Annucci") survived initial review. (Dkt. No. 7 at 25). On September 20, 2019, those defendants filed a motion to dismiss portions of the complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. No. 17). On February 4, 2020, I recommended that the motion be granted, and that the complaint for injunctive relief be dismissed as moot against defendants Bruen, Barber, and Annucci because plaintiff was no longer in the custody of the Department of Corrections and Community Supervision ("DOCCS"). (Dkt. No. 26). On May 19, 2021, Judge Hurd adopted the recommendation in its entirety. (Dkt. No. 31).

The only defendants now remaining are Gumbus, Foster, LaClair, and King. The remaining claims are as follows:

1. First Amendment access to courts claim, arising from plaintiff's May 2017 suspension from the law library, against defendants Gumbus, LaClair, Foster, and King. (Dkt. No. 7 at 15) (*See* Compl. at 13-14, 15).

2. First Amendment retaliation claims against defendant Gumbus–alleging that she harassed plaintiff, confiscated one of his grievances, and filed false misbehavior reports against him in retaliation for grievances filed against her–and against defendant LaClair for affirming the denial of two of plaintiff's grievances. (Dkt. No. 7 at 18) (citing Compl. at 6, 7, 9).

Defendants now move for summary judgment, arguing that all of plaintiff's remaining claims must be dismissed as against all remaining defendants. (Dkt. No. 40). In support of their motion, defendants have filed a copy of plaintiff's deposition (Dkt. No. 40-2 (Def.s' Ex. A) ("Pl.'s Dep.")); copies of three grievances filed by plaintiff

4

(Dkt. Nos. 40-6 to 40-8 (Def.s' Exs. E-G)); a copy of plaintiff's criminal sentence and commitment, together with the Appellate Division's order assigning counsel to plaintiff for his direct appeal and the County Court's letters regarding plaintiff's pro se motion to vacate his criminal conviction. (Dkt. Nos. 40-3 to 40-5 (Def.s' Ex. B, C, D)). Defendant Gumbus has filed a declaration in support of the summary judgment motion, together with copies of her misbehavior reports and a copy of the relevant FOM #371.[5] (Dkt. No. 40-9 ("Gumbus Decl.") & Exs. 1-4). For the following reasons, this court agrees with defendants and will recommend granting their motion for summary judgment, dismissing the complaint in its entirety.

## II.    **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which

---

[5] As discussed below, the FOM was amended in December of 2018 and no longer requires mandatory suspension for missed call-outs. (Gumbus Decl. ¶ 9).

support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[6] The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise. Local Rule 56.1(b). The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*

---

[6] Previously Local Rule 7.1(a)(3).

## IV.    Access to Courts

### A.    Legal Standards

The United States Constitution guarantees prisoners a "meaningful right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 830 (1977).  As the Supreme Court explained in *Bounds*, this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.  However, "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance," nor did it "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Instead, "the Constitution guarantees only the tools that 'inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.'" *Collins v. Goord,* 438 Supp. 2d 399, 415–16 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 355).  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

The courts have recognized two variants of claims for denial of access to courts: first, "forward-looking claims," where "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," and second, "backward-looking access claims," which cover "specific cases that cannot now be tried (or tried with all material evidence)" due to the actions of state officials. *Jean-*

*Laurent v. Lawrence,* No. 12-CV-1502, 2015 WL 1208318, at *3 (S.D.N.Y. Mar. 17, 2015) (citing *Christopher v. Harbury*, 536 U.S. 403, 413-14 & n. 11 (2002)). "The Second Circuit has emphasized, however, that the viability of [backward-looking] claims is far from clear, pointing out that the [Supreme Court's] *Harbury* decision was careful not to endorse their validity." *Id.* (quoting *McNaughton v. de Blasio*, No. 14 Civ. 221, 2015 WL 468890, at *12 (S.D.N.Y. Feb. 4, 2015) (other citations omitted). Although the availability of a backward-looking access claim remains uncertain in this Circuit (*see Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012) ("The viability of backward-looking right-of-access claims is far from clear in this Circuit . . .")), the existing case law suggests four elements:

> First, the plaintiff must identify a nonfrivolous, arguable underlying claim.  Second, the plaintiff must establish that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim. Third, the plaintiff must show that the defendant's alleged conduct was deliberate and malicious[7]. Fourth, the plaintiff must demonstrate that the defendant's actions resulted in an actual injury to the plaintiff.

*Jean-Laurent v. Lawrence,* 2015 WL 1208318, at *4 (internal citations and quotations omitted).  What does remain clear is that such denial-of-access claims are "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Harbury*, 536 U.S. at 415; *see also Sousa*, 702 F.3d at 128 (citation omitted).

---

[7] *But see Desmarat v. Artus,* No. 08-CV-977 (DNH/RFT), 2011 WL 1564605, at *7 (N.D.N.Y. Mar. 25, 2011) (questioning whether 'maliciousness' is a proper element of a backward-looking access to court claim, based on Second Circuit jurisprudence).

## B.    Analysis

Plaintiff claims that defendant Corrections Officer ("CO") Gumbus denied him

access to courts when she issued a thirty-day suspension of his law library privileges on

May 30, 2017.[8]  Defendant Gumbus was the Law Library Supervisor at Franklin

Correctional Facility during the relevant time period.[9] (Gumbus Decl. ¶¶ 1-2) (Dkt. No.

40-9).  Plaintiff claims that defendant Gumbus's actions prevented him from properly

litigating his New York Criminal Procedure Law § 440.10 motion to vacate his criminal

conviction.

In his complaint, plaintiff alleges that the thirty-day suspension was issued

pursuant to FOM #371, because he missed three scheduled law library "call-outs."

(Compl. at 6).  Plaintiff claims that the suspension

> interfered with Plaintiff's ability to establish a sufficient legal
> argument why (his) conviction should be vacated by denying
> (him) access to law library resources such as typewriters, and
> assistance, as well as research materials . . . required to
> support (his) claims in the motion that the underlying
> conviction should be vacated until the Westchester County
> Court ordered a deadline.

(*Id.*)  Defendants' submissions, including the plaintiff's deposition, show that plaintiff's

claim has no merit.  Plaintiff was convicted on November 23, 2016 in Westchester

County Court and was appointed counsel on February 22, 2017 to represent plaintiff on

his direct appeal. (Def.'s Ex. B, C) (Sentence & Commitment; App. Div. Order

---

[8] As stated above, plaintiff was suspended on four occasions, but Judge D'Agostino dismissed plaintiff's access to court claims with respect to the three other suspensions.

[9] Defendant Gumbus still held that position at the time of her declaration in November of 2020. (Gumbus Decl. ¶ 1-2).

appointing counsel).

According to correspondence from the Westchester County Court, plaintiff filed his pro se section 440.10 motion in April of 2017, long before his May 30, 2017 suspension from the law library and at the same time that he was being represented by counsel on appeal. (Def.'s Ex. D at 3).  Plaintiff wrote a letter to the Westchester County Court on May 22, 2017, asking to amend his section 440.10 motion. Unfortunately, the letter was not forwarded to the County Court Judge until June 20, 2017.[10] (Def.s' Ex. D at 2).  By that time, the People had already responded to plaintiff's motion to vacate.  However, given that the dely in requesting amendment was not plaintiff's fault, the County Court gave plaintiff until July 21, 2017 to file his amended motion. (*Id.*)

Even though plaintiff did not file an amended motion to vacate by July 21, 2017, the County Court gave plaintiff a further extension to August 18, 2017 to file a "reply" to the prosecutor's opposition papers.  At his deposition in this case, plaintiff testified that he was able to file a reply by the County Court's deadline. (Pl.'s Dep. at 83).  The County Court issued its decision, denying the motion to vacate in October of 2017. (Pl.'s Dep. at 85-87).  Defendant Gumbus's issuance of a thirty-day suspension on May 30, 2017 did not prevent plaintiff from filing his section 440.10 motion, nor did it prevent him from moving to amend his section 440.10.

During his deposition, plaintiff admitted that even if an inmate were suspended

---

[10] This delay is not attributable to defendant Gumbus, but was apparently due to the fact that plaintiff did not send the May 22, 2017 correspondence directly to the Judge's chambers, nor did he serve the prosecutor. (*See generally* Def.s' Ex. D).

from the law library, that inmate could apply for "special access" if he showed a court-ordered deadline that he was required to meet. (Pl.'s Dep. at 75-76). Plaintiff also testified he was granted "special access" to the law library from July 7, 2021 until July 21, 2021 in order to work on his section 440.10 motion in order to meet his deadline. (Pl.'s Dep. at 73-88, 76). Instead of amending his motion, plaintiff filed a reply.[11] (Pl.'s Dep. at 83, 89-90). Plaintiff can point to no denial of access, nor has he established any injury as the result of defendant Gumbus's actions. Thus, defendant Gumbus's suspension did not deny plaintiff access to courts.

Plaintiff filed a grievance on July 31, 2017, complaining about the suspension. (Def.s' Ex. E) (Superintendent LaClair's August 7, 2017 affirmance of grievance denial). After finding that the suspension was justified based upon plaintiff's failure to report to law library call-out on three occasions, defendant LaClair confirmed that between May 30, 2017 and June 30, 2017, the plaintiff was granted "special access," based on a valid court deadline, extending the suspension until August 4, 2017.[12] (*Id.*)

Plaintiff also testified that he was not sure whether he committed the violation of FOM #371 that formed the basis of his May 30, 2017 suspension. (Pl.'s Dep. at 71-72). However, he testified that he was not challenging the veracity of defendant Gumbus's allegation that he missed three call-outs, but was instead challenging the validity of the

---

[11] Plaintiff also filed a pro se brief to the Appellate Division in conjunction with his direct appeal. (Pl.'s Dep. at 84).

[12] The fact that plaintiff was granted "special access" did not change the time of his suspension. Thus, his suspension would have been extended for the amount of time that he was granted special access to meet the court deadline.

FOM which provided the basis for the suspension.[13] (Pl.'s Dep. at 72-73).  Finally, as noted by defendants, plaintiff was represented by counsel on appeal during the entire time that he complains he was denied access to courts.  Although his section 440.10 motion was ultimately denied,[14] his attorney on appeal was able to obtain a reversal of the plaintiff's criminal conviction.[15] *See People v. Rodgers*, 174 A.D.3d 924 (2d Dep't 2019).

At his deposition, plaintiff complained that the Appellate Division took two years to decide his appeal, implying that if he had been able to properly litigate his section 440.10 motion, his conviction would have been reversed sooner. (Pl.'s Br. at 89-90). The Appellate Division reversed plaintiff's conviction because the verdict was against the weight of the evidence, an argument brought by counsel, which was on the record and therefore required to be brought in the direct appeal of plaintiff's conviction. *Rogers, supra*.  The court referenced plaintiff's pro se brief in the Appellate Division by stating that "[i]n light of our determination, we need not address the defendant's remaining contentions, including those raised in his pro se supplemental brief." *Id.* at 925.  Thus, it was counsel's argument, not the arguments in plaintiff's pro se brief that influenced the Appellate Division's decision to reverse plaintiff's conviction.

---

[13] Plaintiff's challenge to the validity of FOM #371 was dismissed by Judge D'Agostino in her initial order. (Dkt. No. 7 at 23-24).  Plaintiff claimed that defendants Foster and King failed to adhere to DOCCS directives related to the approval of FOM #371. (*Id.*) (citing Compl. at 15).

[14] Plaintiff stated that the County Court's decision was thirteen pages long and explained why the Court denied plaintiff's motion, including that some of the claims should have been brought on appeal. (Pl.'s Dep. at 88-89).

[15] Plaintiff filed his section 440.10 motion to vacate his conviction at the same time that his direct appeal was being completed and filed by counsel.

A review of all the evidence presented shows that defendant Gumbus's action in suspending plaintiff from the law library due to his failure to appear for three call-outs did not deny him access to courts.  Plaintiff cannot show that the defendant's actions hindered him in presenting his legal claims, nor can plaintiff show an "actual injury" as the result of defendant Gumbus's actions.  Plaintiff filed his section 440.10 prior to his suspension from the law library, he has never stated what his amendment would have been and why it was non-frivolous, and although he never filed a motion to amend, he was able to file a reply.  Plaintiff admitted that, notwithstanding any suspension, he was afforded special access to the law library to complete any papers that he desired to file, by the court's deadline.  Plaintiff had an attorney, who had been assigned to prosecute the appeal of his conviction at the same time that he filed his section 440.10 motion, and his attorney was successful in overturning the conviction. The fact that his section 440.10 motion to vacate was not successful does not establish denial of access.[16] Because plaintiff cannot establish an underlying constitutional violation with respect to the May 30, 2017 incident, the complaint must also be dismissed as against defendants LaClair, Foster, and King, who are alleged only to be defendant Gumbus's superiors.[17]

---

[16] Plaintiff has failed to oppose the defendant's argument and has failed to dispute the defendant's statement of material facts.

[17] Because there is no underlying constitutional violation, the court need not decide any issue of the personal involvement of the plaintiff's superiors, LaClair, Foster, and King.  Plaintiff argued that they were personally involved in the constitutional violation because they implemented the policy (FOM #371) that allowed defendant Gumbus to suspend plaintiff from the law library. (Dkt. No. 7 at 13) (citing Compl. at 13-14, 15).  There was no underlying constitutional violation; thus, the complaint would have to be dismissed as against the three defendants, even if they were responsible for implementing FOM #371.  In addition, as stated above, plaintiff's underlying challenge to FOM #371 was dismissed in Judge D'Agostino's initial order. (Dkt. No. 7 at 23-24).

## V.    Retaliation

### A.    Legal Standards

To state a First Amendment claim of retaliation, an inmate must allege facts plausibly suggesting that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014)(citations omitted).  The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003)).  In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care." *Rivera v. Goord*, 119 F. Supp 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).  Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms." *Dolan v. Connolly,* 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 (2002)).

In order to satisfy the final prong, "the causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Cruz v. Grosso,* No. 9:13-CV-30 (FJS/TWD), 2014 WL 2176256, at *6 (N.D.N.Y. May 23, 2014) (citing *inter alia Colon,* 58 F.3d at 873).  Several factors may be considered in determining whether a causal connection exists between the plaintiff's

protected activity and a prison official's actions, including temporal proximity between the protected activity and the alleged retaliatory act, and statements by the defendant concerning his or her motivation. *Cruz,* 2014 WL 2176256, at *6 (citing *Colon*, 58 F.3d at 872-73).  However, temporal proximity alone is not enough to establish a causal connection.  The Second Circuit has held that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise." *Thomas v. Waugh,* No. 9:13-CV-0321 (MAD/TWD), 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015) (quoting *Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001).

Even where plaintiff can make a showing of retaliatory motive, the defendant may be entitled to summary judgment if she can show that the alleged retaliatory action would have occurred even without the improper motivation. *Greer v. Mehiel*, 805 F. App'x 25, 29 (2d Cir.), *cert. denied*, 141 S. Ct. 136 (2020), *reh'g denied*, 141 S. Ct. 217 (2020) (citing *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). *See also Jordan v. Bd. of Elections*, 816 F. App'x 599, 602-603 (2d Cir. 2020); *Osborne v. Harris*, No. 9:20-CV-673 (TJM/ATB), 2021 WL 1131413, at *11 (N.D.N.Y. Jan. 15, 2021) (citations omitted), *report-recommendation adopted by* 2021 WL 1124575 (N.D.N.Y. Mar. 24, 2021).  The defendant bears the burden of making the showing that she would have taken exactly the same action in the absence of an improper motive. *Greer*, 805 F. App'x at 29 (citing *Scott*, 344 F.3d at 288).

## B.    Analysis

In this case, plaintiff alleges that defendant Gumbus retaliated against him for

filing grievances by "harassing" him and filing "false" misbehavior reports. (Compl. at 7-10). Plaintiff also claims that defendant Superintendent LaClair retaliated against him because defendant LaClair affirmed the denial of plaintiff's grievances. (*Id.*)

Plaintiff claims that on July 18, 2017, he filed two grievances which were consolidated into one grievance. (Compl. at 6) (citing Grievance #FKN-13600-17).  In these grievances, plaintiff claimed (1) that the thirty-day suspension of law library privileges was "in violation of New York State statutes for inmate behaviors,"[18] (2) FOM #371 was inconsistent with DOCCS policies; and (3) the law library supervisor [defendant Gumbus] did not have the authority to impose "sanctions for the loss of privileges on any prisoner."[19] (Compl. at 6).  Plaintiff states that on August 1, 2017, he was afforded a hearing on Grievance # FKN-13600-17. (Compl. at 6).  Plaintiff states that "a decision was rendered," and he appealed the decision to the Superintendent. (Compl. at 6-7).  Defendants have filed defendant LaClair's affirmance of the denial of Grievance # FKN-13600-17, which is dated August 7, 2017, and which references defendant Gumbus's documentation, showing that plaintiff missed three law library call-outs. (Def.s' Ex. E).

Plaintiff claims that on August 5, 2017, presumably in retaliation for Grievance # FKN-13600-17, defendant Gumbus "harassed" plaintiff because he was typing Grievance # FKN-13644-17 in the law library. (Compl. at 7).  Plaintiff states that on August 6, 2017, he received a misbehavior report, written by defendant Gumbus, and

_____

[18] The court assumes that plaintiff is referring to the May 30, 2017 suspension.

[19] The court assumes that plaintiff means that defendant Gumbus did not have the authority to suspend plaintiff's law library privileges.

16

charging plaintiff with "typing a grievance in the law library." (Compl. at 7). Plaintiff states that at the bottom of the misbehavior report, defendant Gumbus referred to a complaint filed by plaintiff on "7/18/17." (*Id.*) Plaintiff states that on August 16, 2017, plaintiff was found guilty after a disciplinary hearing of the following charges: creating a disturbance and refusing a direct order.[20] (*Id.*)

Defendant Gumbus has attached a copy of the misbehavior report that she issued with respect to the August 5, 2017 incident. (Gumbus Decl. Ex. 1). The court would first point out that plaintiff was ***not*** charged with "typing a grievance" in the law library. (*Id.*) Plaintiff was charged with creating a disturbance and refusing a direct order.[21] In the misbehavior report, defendant Gumbus stated that she was making rounds of the law library when she noticed that plaintiff was typing a grievance complaint. (Gumbus Decl. ¶ 4 & Ex. 1). Defendant Gumbus informed plaintiff that the law library was only for legal work, and grievances were not considered "legal work." She gave plaintiff a direct order to stop typing the grievance. (*Id.*) However, when she returned after another round, plaintiff was still typing his grievance. Defendant Gumbus again told plaintiff to stop typing the grievance and reminded him that he was in the library on "special access" because he had a court-ordered deadline and was supposed to be doing legal work for that deadline. (*Id.*)

---

[20] It should be noted that a law library suspension is different than a sanction imposed after a disciplinary hearing. The thirty-day suspension pursuant to FOM #371 could be imposed by the law library supervisor (FOM #371(VI)(A)(2)), while a misbehavior report contains specific charges and is followed by a disciplinary hearing. The failure to attend call-outs was not the basis for either of plaintiff's misbehavior reports.

[21] This is consistent with the plaintiff's own statement of the result of the disciplinary hearing.

Plaintiff began repeating that his grievance was "legal work," at which point, the other inmates in the law library became distracted. (*Id.*)  Defendant Gumbus told plaintiff that if he said "that one more time," he would be evicted from the law library and reminded him that the law library was for legal research only.  Plaintiff then complied with defendant Gumbus's order. (*Id.*)  At the bottom of the misbehavior report, defendant Gumbus wrote: "Please find answer to a complaint filed by Inmate Rodgers dated 7/18/17."[22] (*Id.*)

During his deposition, plaintiff admitted that he was typing a grievance on August 5, 2017, during the time that he was on "special access" in order to meet his court-ordered deadline and was supposed to be doing legal research. (Pl.'s Dep. at 96-98).  He was given special access in order to work on the papers relating to his section 440.10 motion. (Pl.'s Dep. at 98).  Defendant Gumbus has attached FOM #371, in which it clearly states that "special access" is to "meet a legally defined deadline." (Gumbus Decl. Ex. B; FOM #371(VI)(A)(2)).  The FOM further provides that "[t]he law library is available to those inmates seriously pursuing legal issues, through research. As such, loud and/or disruptive conversation, or inmates not engaged in legal research, will be cause for eviction." (*Id.* FOM #371(VI)(C)(1)).

Plaintiff essentially disagreed with defendant Gumbus's interpretation of the FOM. (Pl.'s Dep. at 101-102).  At his deposition, plaintiff testified that he believed that

---

[22] It is unclear why defendant Gumbus attached her "answer" to plaintiff's previous grievance to the misbehavior report, charging him with creating a disturbance.  But, the answer to this question is not relevant to this court's decision because I am finding that even if defendant Gumbus had a retaliatory motive, she would have issued the misbehavior report based on plaintiff arguing with her about typing the grievance.

he could type his grievance first and then work on the legal research for which he was given the "special access."[23] (Pl.'s Dep. at 101). At his deposition, although he did not dispute that he was "completing" his grievance when he had the "conversation" with defendant Gumbus, he claimed that the misbehavior report was "inaccurate" because the guilty finding was overturned on appeal.[24] (Pl.'s Dep. at 102-104).

The misbehavior that was alleged was not related to the grievance, but rather to the discussion that occurred when plaintiff tried to explain to defendant Gumbus that he believed he was entitled to type the grievance in the law library even after she told him to stop.[25] Plaintiff admits that the conversation took place and does not claim that other inmates were not distracted by the interaction between plaintiff and defendant Gumbus. Plaintiff has failed to respond to the defendants' motion and thus, admits the facts as stated by defendant. Thus, defendant Gumbus has established that she would have issued the August 5, 2017 misbehavior report even without a retaliatory motive. In addition, there is no indication that defendant Gumbus "confiscated" the grievance or that plaintiff was prevented from filing the grievance.

---

[23] Although not critical to the decision herein, it should be noted that plaintiff's interpretation of the FOM does not make sense. If an inmate is granted "special access" to the law library, when he is otherwise suspended, because he has a court ordered deadline, it is unreasonable to believe that the inmate could work on some non-case-related matter as long as he spent a few minutes or more on the case in which the deadline was imposed. (T. 99-102). This is particularly true when the non-case-related matter is a grievance which does not require legal research and does not need to be typed.

[24] There is no documentation in the record of this disposition relative to the August 2017 misbehavior report. There is a handwritten notation on defendant Gumbus's May 2018 misbehavior report that states "dismissed," with a "?" underneath, and what looks like "not an FPMS ?" underneath that. (Gumbus Decl. Ex. 3).

[25] During his deposition, plaintiff testified that the law library was the only place that he could access a typewriter to type the grievance, but then admitted that he was aware that grievances could be handwritten and were not required to be typed. (T. 91, 96).

Plaintiff also claims that a misbehavior report that defendant Gumbus issued to plaintiff on May 19, 2018 was "retaliatory." (Compl. at 8-9).  In his complaint, plaintiff states that on May 20, 2018, he received another thirty-day suspension from the law library from defendant Gumbus, together with a misbehavior report, charging plaintiff with a "movement" violation and being "out of place." (Compl. at 8-9).  Defendant Gumbus has filed a copy of the suspension notice and the misbehavior report, dated May 19, 2018. (Gumbus Decl. Exs. 3, 4).  The suspension notice cites FOM #371 and explains that all law library call-outs are mandatory, and that failure to appear for three call-outs will result in a thirty-day suspension. (Gumbus Decl. Ex. 4).  The notice also reminds the inmate that if he had a court ordered deadline, he could still apply for special access. (*Id.*)  Finally, the notice specifies the dates that plaintiff failed to appear and informs plaintiff that if he "had a valid reason for not appearing (e.g., MANDATORY medical or other call-out) you can write to the law library supervisor and it will be looked into further and a determination made." (*Id.*)

Plaintiff does not dispute that he missed three call-outs.  At his deposition, he argued that he had a valid reason for failing to attend.[26] (*See* T. 105-109).  Plaintiff claimed that the hearing officer dismissed the misbehavior report because the plaintiff's absences were properly explained.[27] (T. 108-109).  Thus, defendant Gumbus's misbehavior report was not "false," and she has shown that she would have issued the

---

[26] As of December, 2018, FOM #371 has been amended to remove the 30-day suspension for missed call-outs. (Gumbus Decl. ¶ 9).

[27] If the absences were adequately explained, then it is logical that a misbehavior report, charging plaintiff with being out of place and a movement violation would also be dismissed.

notice and the misbehavior report regardless of any retaliatory motive that she might have had.[28]  Thus, plaintiff's claims of retaliation may be dismissed as against defendant Gumbus and as against defendant LaClair who affirmed the denial of plaintiff's grievances against defendant Gumbus.[29]

      **WHEREFORE**, based on the findings above, it is

      **RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 40) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY AS AGAINST ALL REMAINING DEFENDANTS.**

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

---

[28] This court does not find that defendant had a retaliatory motive, it is only assuming so for purposes of a dual motivation analysis.  The court also notes that plaintiff is claiming that defendant Gumbus retaliated against plaintiff in May of 2017 for grievances that he filed ten months earlier in July of 2017. (Pl.'s Dep. at 111).  Plaintiff claimed that defendant Gumbus would make "smart remarks" to him about his issues with the law library. (Pl.'s Dep. at 112).  But plaintiff stated that he did not respond because he did not wish to jeopardize his ability to work on his case. (*Id.*)  The longer the time between the plaintiff's protected activity and the alleged retaliation, the less support there will be for a causal connection between the protected activity and the alleged retaliatory conduct. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 128-29 (2d Cir. 2013) (seven months sufficient) (citing *Grant v. Bethlehem Steel Co.*, 622 F.2d 43, 45 (2d Cir. 1980) (eight months is sufficient); *Espinal v. Goord*, 558 F.3d 119, 129-30 (2d Cir. 2009) (six months is sufficient for an inference of retaliation).  This court need not make any decision regarding the time between the protected activity and defendant's May 2018 misbehavior report because the court has found that defendant Gumbus would have issued the misbehavior report, notwithstanding a retaliatory motive.

[29] Defendants also argue that defendant LaClair was not personally involved in any alleged retaliation by defendant Gumbus based on his affirming the denial of plaintiff's grievances.  Because this court has found no underlying constitutional violation by defendant Gumbus, the court need not discuss the issue of personal involvement by defendant LaClair.

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated:      May 10, 2021

Andrew T. Baxter
U.S. Magistrate Judge